SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VERNELL LEWIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-0067 |
| | § | |
| JO ANNE B. BARNHART, | § | |
| Commissioner, Social | § | |
| Security Administration, | § | |
| | § | |
| Defendant. | § | |

## OPINION ON SUMMARY JUDGMENT

Plaintiff Vernell Lewis filed this case pursuant to 42 U.S.C. § 405(g) seeking review of the final decision of the Commissioner denying her request for disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act.[1] The parties have filed motions for summary judgment (Dkts. 9, 10). Having considered the parties' submissions, the administrative record,[2] and argument of counsel at a hearing on March 21, 2007, the court grants Lewis's motion, denies the Commissioner's motion, and remands this case pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] The parties have consented to the jurisdiction of this Magistrate Judge for all purposes, including final judgment.

[2] Certain records submitted to the court relate to a patient other than Vernell Lewis. *See* Tr., at 571-98, 610. The court orders the clerk to strike these pages from the administrative record on file with the court (Dkt. 4) to protect the privacy of the non-party patients. The parties are directed to take measures to ensure that such records are removed from the agency's administrative record.

I.   **Background**

Petitioner Vernell Lewis[3] is a 56 year old woman who has been trying to get social security benefits since 1994.[4]  Lewis filed an application for benefits under Title II and Title XVI of the Social Security Act on May 3, 1999.  Lewis claims she has been disabled since August 1, 1996 (or, alternatively, December 31, 1998 for the purpose of Title II benefits), due to diabetes, high blood pressure, heart disease, neuropathy, blurry vision, and depression.  After her 1999 application was denied initially and on review, Lewis sought a hearing, which was held on August 21, 2001.  A non-treating medical expert and a vocational expert testified at that hearing.  The ALJ issued a September 17, 2001 decision finding that Lewis was able to perform her past work as an insurance rate writer technician and was not disabled.

In an August 22, 2003 order, the Appeals Council vacated the ALJ's decision and remanded the case for a "function by function assessment" of Lewis's work capacity, further evaluation of the severity of her mental impairment, including review of the January 2000 opinion of Dr. Riaz Mazcuri, and further evaluation of her ability to perform her past relevant work.

---

[3]  Petitioner is referred to in some records as Vernell White.  The parties agree that Vernell White and Vernell Lewis are the same person.

[4]  The ALJ's decision indicates that Lewis's first application, filed in September, 1994, was denied by final decision of the Commissioner in September 1998.  No records from that application are before the court.  The Commissioner did not raise the issue of *res judicata* in its briefing, but suggested at the hearing that certain of Lewis's claims might be barred.  That issue is not before the Court, but may be considered on remand.

2

The ALJ held a hearing after remand on February 5, 2004. This time the ALJ found that Lewis was limited to less than the full range of sedentary work and could not perform her past relevant work. However, the ALJ concluded in his May 19, 2004 decision that Lewis had transferrable skills from her prior work and could perform sedentary, semi-skilled jobs such as appointment clerk, repair order clerk, and procurement clerk. Lewis appealed. The Appeals Council denied review and the ALJ's May 19, 2004 decision became final.[5]

## II.   Standard of Review

Section 405(g) of the Social Security Act sets forth the standard of review in this case. The federal courts review the decision of the Commissioner to deny Social Security benefits to determine whether (1) the Commissioner applied the proper legal standard and (2) the Commissioner's decision is supported by substantial evidence. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). Substantial evidence is "more than a scintilla and less than a preponderance." *Masterson*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). The court does not reweigh the evidence, try the questions *de novo*, or substitute its own judgment for that of the Commissioner. *Masterson*, 309 F.3d at 272. "Conflicts in the evidence are for the

---

[5] According to the ALJ's May 19, 2004 decision, Lewis filed yet another application in April 2003, while her appeal was still pending. The ALJ stated that he consolidated the 2003 application with the 1999 application in issuing his May 19, 2004 decision. Lewis subsequently filed yet another application for benefits in May 2005 and in a November 3, 2005 decision the Commissioner found Lewis disabled. That decision is not before the court.

[Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

In order to qualify for disability benefits, a plaintiff must prove he has a disability, which is defined under the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423 (d)(1)(A) and 1382c(a)(3)(A); *Masterson*, 309 F.3d at 271. The administrative law judge must follow a five-step sequential analysis to determine whether a plaintiff is in fact disabled:

1. Is the claimant currently engaged in substantial gainful activity, *i.e.*, working? If the answer is yes, the inquiry ends and the claimant is not disabled.

2. Does the claimant have a severe impairment? If the answer is yes, the inquiry proceeds to question 3.

3. Does the severe impairment equal one of the listings in the regulation known as Appendix 1? If so, the claimant is disabled. If not, then the inquiry proceeds to question 4.

4. Can claimant still perform his past relevant work? If so, the claimant is not disabled. If not, then the agency must assess the claimant's residual functional capacity.

5. Considering the claimant's residual functional capacity, age, education, and work experience, is there other work claimant can do? If so, claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718.  At step five, the burden shifts to the Commissioner to show that employment for the claimant exists in the national economy. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991).

### III.    Analysis

Lewis moves for summary judgment reversing the ALJ's determination that she was not disabled as of August 1, 1996 or at any time thereafter.  Lewis asks the court to award her benefits, or in the alternative, remand the case for further proceedings.  Lewis argues the ALJ erred in the following ways:  (1) by not finding that her depression meets or equals the listing in Appendix 1 for an "affective disorder"; (2) by failing to consider Lewis's medications in assessing her limitations; (3) by finding her limited to simple, *unskilled* work at one point in his opinion and yet ultimately concluding she was able to perform *semi-skilled* work; and (4) by not considering additional evidence Lewis submitted after the February 2004 hearing.  The Commissioner contends that the ALJ's decision is supported by substantial evidence and correctly applies legal standards.  The court finds that Lewis's third point of error necessitates remand of this action.

Lewis asserts that the ALJ's decision is internally inconsistent in finding both that she is limited to unskilled work, and that she can perform certain semi-skilled, sedentary jobs. The Commissioner contends that the decision is not inconsistent because the ALJ's statement that "the claimant can satisfy the demands of simple, unskilled work," was merely a recitation of the opinions of Dr. Mazcuri and Dr. Gilliand, not the ALJ's actual finding.  The

5

Commissioner further argues that the ALJ's decision was supported by his finding that Lewis's testimony was not entirely credible, and by the fact that Lewis had not sought treatment for depression in the months leading up to the February 2004 hearing.

The entire passage containing what Lewis characterizes as the ALJ's finding regarding unskilled work is as follows:

> Therefore, the undersigned rejects the claimant's contention that she is unable to concentrate or complete even simple tasks involving one or two step instructions. Instead, the undersigned gives great probative weight to the findings and well-supported medical opinions of Dr. Mazcuri and Dr. Gilliand that show that the claimant can satisfy the demands of simple, unskilled work, including interacting with others.[6]

The Commissioner's characterization of the ALJ's citation to the opinions of Dr. Mazcuri and Dr. Gilliand as something less than a "finding" is correct, but not dispositive. Notwithstanding the observation that two "well-supported medical opinions" concluded that Lewis could perform simple, unskilled work, the ALJ found only that Lewis could not perform "assembly type jobs, and tasks involving complex or detailed instructions, as commonly required of skilled work."[7] The vocational expert testified that Lewis has transferrable skills from her past work, including use of office machines, reading insurance policies, reading and entering data records, math skills, filing, and customer service, and that several semi-skilled occupations exist in the economy for a hypothetical worker with Lewis's skills and limitations. The ALJ concluded that Lewis was not disabled because she could

---

[6] *Id.* at 20.

[7] *Id.* at 23.

6

perform semi-skilled, sedentary jobs such as appointment clerk, repair order clerk, and procurement clerk.[8]

While he purported to give "great probative weight" to medical opinions that Lewis could perform simple, *unskilled* work, the ALJ nonetheless found that she could perform *semi-skilled* work. Dr. Mazcuri stated that Lewis was "able to maintain concentration, at least cognitively, in terms of completing simple tasks. I am not sure if she would be able to handle long periods of sustained concentration and attention."[9] Dr. Gilliand's report indicates that Lewis "often" had "deficiencies of concentration,"[10] and the ALJ recognized Dr. Gilliand's conclusion that Lewis's impairment "most significantly impacted her ability to concentrate and attend to tasks."[11] The vocational expert testified at the February 5, 2004 hearing that if Lewis had significant gaps or lapses in concentration, that would preclude semi-skilled work.[12]

The ALJ rejected Lewis's subjective testimony that she was unable to concentrate to perform even simple tasks involving one or two step instructions. But it does not necessarily, or logically, follow from a finding that Lewis is able to perform simple tasks involving one

---

[8]   *Id.*

[9]   *Id.* at 145.

[10]   *Id.* at 252.

[11]   *Id.* at 20.

[12]   *Id.* at 753.

or two step instructions, that she can perform semi-skilled work.[13] The ALJ does not cite any medical evidence regarding Lewis's ability to maintain concentration sufficiently to perform semi-skilled work. The medical records that are cited, those of Dr. Mazcuri and Dr. Gilliand, suggest that Lewis could not maintain concentration for more than a short period of time, at least as of early 2000.

At the 2004 hearing, the ALJ expressed skepticism that Lewis's depression could support a finding below the capacity for semi-skilled work because she had not sought treatment for depression recently and her memory at the hearing was good.[14] However, clinical notes from January 14, 2004, less than one month before the hearing, reflect a diagnosis for Lewis of "major depression" and recommend continuation of Lexapro and a referral to a psychiatric clinic.[15] Similarly, treatment notes from August 29, 2003 indicate

---

[13]     (b) *Semi-skilled work.* Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing, or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

20 C.F.R. Part 404, Subpart P, § 404.1568(b).

[14]     *Id*. at 749.

[15]     *Id*. at 482, 484.

Lewis was diagnosed with major depression and prescribed Lexapro at that time.[16] Moreover, Lewis testified that she was taking medication for depression at the time of the hearing.

The potential inconsistency between the medical evidence and the ALJ's finding that Lewis was able to perform semi-skilled work is significant. Given Lewis's age[17] and education level, if Lewis is limited to unskilled work, the Medical-Vocational Guidelines would dictate a finding of disability at age 50 birthday.[18] *See* 20 C.F.R. 404, Subpart P, App. 2.

Therefore, the ALJ's finding that Lewis was not disabled is reversed. This case will be remanded for further evaluation of Lewis's residual functional capacity and for determination of whether the Medical-Vocational Guidelines apply in this case.[19] Because this case is being remanded to the ALJ for further proceedings, the court does not address Lewis's other points of error.

## IV. Conclusion

---

[16] *Id.* at 530-32.

[17] Lewis was born October 8, 1950, making her 50 years old as of October 8, 2000.

[18] Counsel for the parties confirmed at the March 21, 2007 hearing that this is a correct reading of the Guidelines.

[19] Lewis contends that the ALJ did not consider additional records she submitted after her hearing. The ALJ is instructed to take these records into consideration on remand.

9

The ALJ's finding that Lewis was not disabled as of May 19, 2004 is reversed. This case is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

Signed at Houston, Texas, on March 29, 2007.

Stephen Wm Smith
United States Magistrate Judge